```
UNITED STATES DISTRICT COURT                                    FILED
EASTERN DISTRICT OF NEW YORK                                    CLERK
----------------------------------------------------------X
SPREAD ENTERPRISES, INC., d/b/a OLA               8/22/2012 3:24 pm
BRASIL, individually and on behalf of all others
similarly situated,                                      U.S. DISTRICT COURT
                                                   EASTERN DISTRICT OF NEW YORK
                                                         LONG ISLAND OFFICE
```

        Plaintiff,            **MEMORANDUM OF**
                                    **DECISION AND ORDER**
   -against-                  11-CV-4743 (ADS)(ETB)

FIRST DATA MERCHANT SERVICES
CORPORATION, a Florida corporation, and
WELLS FARGO BANK, N.A., a foreign
corporation,

                      Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Kaplan Fox & Kilsheimer, LLP**
*Attorneys for the Plaintiff*
850 Third Avenue, 14th Floor
New York, NY 10022
       By:    Frederic S. Fox, Esq., Of Counsel

**Law Office of Lawrence B. Lambert**
*Attorney for the Plaintiff*
One Datran Center, Suite 400
9100 S Dadeland Blvd
Miami, FL 33156
       By:    Lawrence B. Lambert, Esq., Of Counsel

**Wites & Kapetan, P.A.**
*Attorneys for the Plaintiff*
4400 N. Federal Highway
Lighthouse Point, FL 33064
       By:    Marc A. Wites, Esq., Of Counsel

**Fox Rothschild**
*Attorneys for the Defendants*
2000 Market Street
Tenth Floor
Philadelphia, PA 19103
    By:    David H. Colvin, Esq.,
            Scott L. Vernick, Esq., Of Counsel
100 Park Avenue
Suite 1500
New York, NY 10017
    By:    Oksana Gaussy Wright, Esq., Of Counsel

**SPATT, District Judge.**

The Plaintiff Spread Enterprises, Inc. ("Spread" or "the Plaintiff") commenced this action against the Defendants First Data Merchant Services Corporation ("FDMS") and Wells Fargo Bank, N.A. ("Wells Fargo" and, together with FDMS, "the Defendants"), and former Defendant Bankcard Brokers, Inc. ("Bankcard") alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and violation of New York General Business Law § 349 ("GBL § 349") on behalf of itself and all others similarly situated. The Defendants now move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c), dismissing the Plaintiff's breach of the covenant of good faith and fair dealing, unjust enrichment, and GBL § 349 claims.

For the reasons set forth below, the Defendants' motion for judgment on the pleadings is granted.

## I. BACKGROUND

The Plaintiff Spread is a corporation that operates a website called www.olabrasil.com, through which it sells pre-paid minutes for international phone calls. Customers pay for these minutes via credit card. The Defendant FDMS is a corporation that processes credit card

payments on behalf of merchants through its "Omaha Platform." The Defendant Well Fargo is a Member Bank of several associations for credit card transactions.

On June 6, 2008, Spread signed a Merchant Processing Application and Agreement with FDMS for the use of FDMS's credit card processing services. Under the agreement, Wells Fargo functions as a Merchant or Member Bank, and accepts credit card payments from card issuer banks on Spread's behalf. Spread agreed to pay several fees in return for these services. The Merchant Agreement is a standard form provided by FDMS, and it incorporates a Program Guide which is allegedly provided on FDMS's website.

According to the Plaintiff, the Merchant Agreement limited per item "Authorization and Capture Transaction Fees" to $0.20 per item. However, according to the Plaintiff, Spread was charged an additional, non-contracted-for, $0.20 per item fee. The Plaintiff alleges that this doubled charge was built in to FDMS's Omaha Platform, and that many of the other Merchants who used FDMS's credit card processing services were also assessed this extra fee. According to the Plaintiff, FDMS shares a portion of these per item fees with Wells Fargo.

On September 28, 2011, Spread commenced the present suit, pursuing claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and violation of GBL § 349. The law suit is filed on behalf of Spread and "[a]ll Merchants nationwide that are parties to Merchant Agreements with Defendant FDMS and were charged Transaction Fees in excess of that allowed by their respective Merchant Agreements." (Am. Compl. 11). On December 14, 2011, Spread filed a notice of voluntary dismissal at to the Defendant Bankcard. On December 16, 2011, Spread filed its amended complaint, removing the Defendant Bankcard from its statement of claims. On February 17, 2012, the Defendant FDMS moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), dismissing the Plaintiff's

3

breach of the covenant good faith and fair dealing, unjust enrichment, and GBL § 349 claims. On March 19, 2012 the Defendant Wells Fargo moved to join the Defendant FDMS's motion for judgment on the pleadings.

## II. LEGAL STANDARDS

The Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). In general, "the standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929, 570 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. at 72 (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L.Ed.2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Rule 12(b)(6). Hertz Corp. v. City of N.Y., 1 F.3d 121, 125 (2d Cir. 1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974)).

### III. DISCUSSION

#### A. Motion for Joinder

As an initial matter, the Court addresses the Defendant Wells Fargo's motion for joinder in and with the Defendant FDMS's motion for judgment on the pleadings. The Plaintiff does not oppose the motion for joinder (though, of course, the Plaintiff opposes the motion for judgment on the pleadings itself). As such, Wells Fargo's motion for joinder is granted.

#### B. Breach of the Covenant of Good Faith and Fair Dealing

The Defendants move for judgment on the pleadings with respect to the Plaintiff's claim for breach of the covenant of good faith and fair dealing, asserting that it is duplicative of the Plaintiff's breach of contract claim.

New York law implies a covenant of good faith and fair dealing "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Thyroff v. Nationwide Mut. Ins.

Co., 460 F.3d 400, 407 (2d Cir. 2006) (citation omitted). The covenant "can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198–99 (2d Cir.2005) (citation omitted).

Under New York law, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim. "[P]arties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002) (citing Fasolino Foods Co., Inc., v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992)); see also L–7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 433 n. 17 (2d Cir. 2011) ("[B]reach of [the duty of good faith and fair dealing] is merely a breach of the underlying contract.") (internal citations and quotations omitted)).

A claim for breach of the covenant of good faith and fair dealing will be duplicative of a breach of contract claim where they are based on the same allegations or where the same conduct is the predicate for both claims. McGee v. State Farm Mut. Auto. Ins. Co., No. 09-CV-3579, 2011 WL 5409393, at *8 (E.D.N.Y. Nov. 8, 2011) ("New York law does not recognize a separate claim for breach of the implied duty of good faith and fair dealing based on the same facts as a claim for breach of contract") (internal citations omitted); L–7 Designs, 647 F.3d at 433 n. 17 ("Because L–7's claim for breach of the implied covenant of good faith and fair dealing (Count IV) is based on the same facts as its claim for breach of contract, it should have been dismissed as redundant.") (citing Harris, 310 F.3d at 81 ("New York law, as discussed above, does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled")); Hall

v. EarthLink Network, Inc., 396 F.3d 500, 508 (2d Cir. 2005) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."); Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce, 70 A.D.3d 423, 894 N.Y.S.2d 47, 49–50 (1st Dep't 2010) (upholding dismissal of the claim for breach of the implied covenant as "duplicative of the breach-of-contract claim" because "both claims arise from the same facts and seek the identical damages for each alleged breach") (internal citations omitted); Fleisher v. Phoenix Life Ins. Co., No. 11-CV-8405, 2012 WL 1538357, at *6 (S.D.N.Y. May 2, 2012) ("To avoid redundancy, "Claims of breach of the implied covenant ... must be premised on a different set of facts from those underlying a claim for breach of contract.") (quoting Deutsche Bank Sec. Inc. v. Rhodes, 578 F. Supp. 2d 652, 664 (S.D.N.Y.2008); Serdarevic v. Centex Homes, LLC, 760 F. Supp. 2d 322, 334 (S.D.N.Y. 2010) ("A claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of a covenant of an express provision of the underlying contract.") (internal quotations and citations omitted).

As such, "[i]n most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative." Echostar DBS Corp. v. Gemstar–TV Guide Int'l, Inc., No. 05-CV-8510, 2007 WL 438088, at *7 (S.D.N.Y. Feb. 8, 2007) (quotation omitted).

In the instant case, the same facts and conduct underlie the Plaintiff's claim for breach of the covenant of good faith and fair dealing and its claim for breach of contract. In its Amended Complaint, the Plaintiff alleges breach of contract by stating "FDMS and Wells Fargo breached the Merchant Agreements by charging Plaintiff and the Class, duplicate and/or additional

7

Transaction Fees." (Am. Compl. ¶ 67). The Plaintiff also alleges that "Defendants FDMS and Wells Fargo thus breach their duties of good faith and fair dealing by imposing onerous additional Transaction Fees not otherwise permitted by the Merchant Agreements or disclosed to Plaintiff and the Class Members in the Merchant Agreements." (Am. Compl. ¶ 83). The Court find that both claims rest on the same factual allegations, namely, that the Defendants charged a not-contracted-for extra $0.20 per item fee. As such, the predicate conduct for both the Plaintiff's breach of contract claim as well as its breach of the covenant of good faith and fair dealing claim is the same alleged overcharge by the Defendants.

The Plaintiff asserts that its claims fall under an exception to the general rule that a breach of the covenant of good faith and fair dealing does not provide its own cause of action, in that a separate claim may be stated where "'one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain'" CSI Investment Partners II, L.P. v. Cendant Corp., 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007) (quoting Sauer v. Xerox Corp., 95 F. Supp. 2d 125, 132 (W.D.N.Y.2000)). The Plaintiff asserts that if the Defendants claim that they had the discretion under the Program Guide to unilaterally impose extra transaction fees, then the Defendants exercised that discretion in violation of the covenant of good faith and fair dealing.

In the Court's view, this assertion is without merit, and the cases the Plaintiff cites in support of its proposition are inapposite. Such a claim that the Defendants breached the covenant of good faith and fair dealing through the bad faith exercise of their discretion can only stand where either there is no claim for breach of contract or where the two claims are based on distinct conduct. Id. ("When 'the conduct allegedly violating the implied covenant is also the predicate for a claim for breach of covenant of an express provision of the underlying contract,'

8

the two claims are duplicative.") (quoting In re Houbigant, Inc., 914 F. Supp. 964, 989 (S.D.N.Y. 1995)); Hospital Authority of Rockville County v. GS Capital Partners V Fund, L.P., No. 09-CV-8716, 2011 WL 182066, at *4 (S.D.N.Y. Jan. 20, 2011) ("the plaintiff may bring two breach of contract claims, one based on breach of the express terms and the other based on breach of the implied duty, as long as they are supported by factually distinct allegations.").

The Plaintiff argues that, because its claims are based on two different contract provisions, this should be akin to claims based on different facts. The Court disagrees. A breach of either provision is properly only part of the Plaintiff's breach of contract claims.

Lastly, the Plaintiff asserts that it may plead its claim for breach of the covenant of good faith and fair dealing in the alternative to its breach of contract claim. While in most cases, a plaintiff may plead even inconsistent claims pursuant to Fed. R. Civ. 8(d), in the context of a claim for breach of the covenant of good faith and fair dealing, "claims are not 'in the alternative' when they are based on the exact same allegations." Gray v. Toyota Motor Sales, U.S.A., Inc., 806 F. Supp. 2d 619, 624 (E.D.N.Y. 2011) (citing Bradbury v. PTN Pub. Co., Inc., No. 93–CV–5521, 1998 WL 386485, at *8 (E.D.N.Y.1998)); see also Boart Longyeart Ltd. v. Alliance Industries, Inc., No. 12-CV-1346, 2012 WL 2357197, at *8 (S.D.N.Y. Jun. 20, 2012) ("While I have previously held that a duplicative implied covenant of good faith and fair dealing claim may stand as an alternative cause of action, more recent Second Circuit case law indicates that dismissal for redundancy is the appropriate outcome here.") (collecting cases).

As such, the Plaintiff's breach of the covenant of good faith and fair dealing claim is dismissed as duplicative of its breach of contract claim.

### C. Unjust Enrichment

In their motion for judgment on the pleadings, the Defendants seek dismissal of the Plaintiff's claim for unjust enrichment, asserting that it is duplicative of the Plaintiff's breach of contract claim.

To prevail on a claim for unjust enrichment in New York State, a plaintiff must establish "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 519 (2d Cir. 2001).

It is thus a quasi-contractual claim that "can be maintained only in the absence of a valid, enforceable contract." Ohio Players, Inc. v. Polygram Records, Inc., No. 99-CV-0033, 2000 WL 1616999, at *4 (S.D.N.Y. Oct. 27, 2000); see also Clark–Fitzpatrick, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) ("It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."); McGee, 2011 WL 5409393, at *9 ("An unjust enrichment claim is duplicative of a breach of contract claim where the cause of action stems from the contractual relationship") (internal citations omitted); Air Atlanta Aero Engineering Ltd. v. SP Aircraft Owner I, LLC, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) ("[Plaintiff's] failure to allege that the contracts at issue are invalid or unenforceable precludes it . . . from seeking quasi-contractual recovery for events arising out of the same subject matter."); Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 587 (2d Cir. 2006) (Plaintiff could "not recover

under a theory of unjust enrichment, inasmuch as the valid and enforceable written [contracts] governed the particular subject matter of this case.").

In this case, there appears to be no genuine dispute that the Merchant Agreement is a binding contract that governs the claims at issue in the present case. This is true even though the parties dispute the interpretation of the controlling contract. See e.g., Price v. Cushman & Wakefield, Inc., No. 08–CV–8900, 2009 WL 3075599, at *6 (S.D.N.Y., Sep. 26, 2009) ("Plaintiff and [Defendant] agree that they are bound by these contract terms; they only dispute whether [Defendant] violated the terms."). Despite the Plaintiff's interpretation of the Defendants' answers as denying the validity of the contract, the Court finds the Defendants' clarification of its position that it does not deny the validity of the contract to be satisfactory. As such, because there exists a valid binding contract governing the issues in question, the Plaintiff's claim for unjust enrichment is dismissed as duplicative.

D.  New York General Business Law § 349

The Court now turns to the portion of the Defendants' motion in which they assert that the Plaintiff's claim for violation of GBL § 349 should be dismissed for failure to state a claim. The Defendants argue that (1) Spread offers only speculative and conclusory allegations in support of its claim, (2) Spread cannot allege that the Defendants' alleged conduct was consumer oriented, and (3) Spread cannot allege that it was deceived by an action that occurred in New York. As explained below, the Court finds that the Defendants' alleged conduct cannot be classified as directed at consumers. Therefore, the Court need not reach the Defendants' first and third arguments.

The New York Consumer Protection Act codified at § 349 of the GBL declares that "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the

11

furnishing of any service" in New York are unlawful. N.Y. Gen. Bus. § 349(a). "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)). "[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a)...." Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005). The purpose of Section 349 is to "'empower customers,' especially 'the disadvantaged' " to "even the playing field of their disputes with better funded and superiorly situated fraudulent businesses." Watts v. Jackson Hewitt Tax Service Inc., 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008) (quoting Vitolo v. Mentor H/S, Inc., 426 F. Supp. 2d 28, 33 (E.D.N.Y. 2006)).

A business is not a consumer for the purposes of GBL § 349. Spirit Locker, Inc. v. EVO Direct, LLC, 696 F.Supp.2d 296, 303 (E.D.N.Y. 2010) ("Subsequent appellate authority, however, excludes businesses from the definition of 'consumer,' stating unequivocally that a consumer is an individual who 'purchases goods and services for personal, family or household use.'") (quoting Sheth v. New York Life Ins. Co., 273 A.D.2d 72, 709 N.Y.S.2d 74, 75 (1st Dep't 2000) (holding that the challenged practices were not consumer-oriented under § 349 because they were directed only at prospective insurance agents)); Cruz v. NYNEX Info. Res., 263 A.D.2d 285, 703 N.Y.S.2d 103, 107 (1st Dep't 2000) ("In New York law, the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services or property primarily for 'personal, family or household purposes.'"); Dollar Phone Corp. v. Dun

12

& Bradstreet Corp., No. 09-CV-3645, 2010 WL 5313737, at *3 (E.D.N.Y. Sep. 2, 2010) ("Courts have repeatedly held that "a consumer, for § 349 purposes, is one who purchase[s] goods and services for personal, family or household use.") (quoting Exxonmobil Inter–America, Inc. v. Advanced Info. Eng'g Servs., Inc., 328 F.Supp.2d 443, 448 (S.D.N.Y.2004)).

However, a business may bring a GBL § 349 action where it is harmed by conduct also directed at consumers. Id. ("Although the scope of the Act is generally limited to claims by consumers, 'a business may bring a § 349 claim if it is harmed by consumer-oriented conduct.'") (quoting Spirit Locker, 696 F. Supp 2d at 302); Spirit Locker, 696 F. Supp 2d at 302 ("Indeed, so long as the conduct is consumer-oriented, even a defendant's business competitor has standing to bring a claim under § 349, provided the competitor is incidentally harmed by the defendant's deceptive conduct.").

However, where the alleged conduct is targeted *only* at businesses, and has no direct impact on consumers, a business may not bring a § 349 claim. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N. A., 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y. 1995) (a plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large."); Dollar Phone, 2010 WL 5313737, at *3 ("Thus, New York courts have generally found that 'when the activity complained of involves the sale of commodities to business entities only, such that it does not directly impact consumers, section 349 is inapplicable.'") (quoting Shema Kolainu–Hear Our Voices v. Providersoft, LLC, No. 09-CV-3140, 2010 WL 2075921, at *7 (E.D.N.Y. May 21, 2010)) (citing Exxonmobil, 328 F.Supp.2d at 449 ("Contracts to provide commodities that are available only to businesses do not fall within the parameters of § 349"); Citipostal, Inc. v. Unistar Leasing, 283 A.D.2d 916, 724 N.Y.S.2d 555, 558 (4th Dep't 2001) ("The acts complained of are limited to business rather than consumer

13

leases, and the conduct complained of cannot carry over to consumer transactions."); Cruz, 703 N.Y.S.2d at 107 (holding that, because the complained of conduct "by definition, [is] a commodity available to businesses only, and plaintiffs fail to show how [such conduct] might either directly or potentially affect consumers, such conduct does not fall within the parameters of the statute")).

The Court in Spirit Locker addressed factual circumstances very similar to the instant case. 696 F.Supp.2d 296 (E.D.N.Y. 2010). Spirit Locker involved a suit between a merchant and a credit card processor, as well as a standard form contract; a large number of potentially affected merchants with similar contracts; and substantial inequality of bargaining power between the parties. Id. at 303. The Spirit Locker court held that "Spirit Locker's complaint alleges conduct that is directed only at other businesses, and businesses cannot be consumers for this purpose. Accordingly, I conclude that the complaint fails to state a claim under § 349 of the New York General Business Law, and Count One is dismissed." Id. at 304.

The Court agrees with the rationale set forth in Spirit Locker. In the instant case, the Defendants' alleged conduct is targeted only at businesses. FDMS's credit card processing services are, by nature, a business product. The Plaintiff's proposed class consists entirely of "Merchants." (Am. Compl. 11). The Plaintiff's assertion that consumers are harmed because the higher cost of credit card processing will be passed on to consumers, is without merit. If the Court accepted this argument, any conduct that causes a business to lose money could be construed as affecting consumers, because this loss may be passed on to consumers in the form of higher prices. This interpretation would stretch the scope GBL § 349 beyond the scope of recognition.

As such, because the Plaintiff does not allege conduct directed at consumers, the Plaintiff's claim based on a violation of GBL § 349 is dismissed.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Defendant Wells Fargo Bank, N.A's motion for joinder to the motion for judgment on the pleadings by the Defendant First Data Merchant Services Corporation is granted; and it is further

**ORDERED**, that the Defendants' motion for judgment on the pleadings dismissing the plaintiff's claim for breach of the covenant of good faith and fair dealing is granted; and it is further

**ORDERED**, that the Defendants' motion for judgment on the pleadings dismissing the plaintiff's claim for unjust enrichment is granted; and it is further

**ORDERED**, that the Defendants' motion for judgment on the pleadings dismissing the plaintiff's claim for violations of New York General Business Law § 349 is granted.

**SO ORDERED**.

Dated: Central Islip, New York
August 22, 2012

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge