UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
SPREAD ENTERPRISES, INC., d/b/a OLA
BRASIL, individually and on behalf of all others
similarly situated,

                         Plaintiff,                    MEMORANDUM
                                                                  OPINION AND ORDER

          -against-                                          CV 11-4743 (ADS) (ETB)

FIRST DATA MERCHANT SERVICES
CORPORATION, and
WELLS FARGO BANK, N.A.,

                        Defendants.
----------------------------------------------------------------------X

       The plaintiff, Spread Enterprises, Inc., d/b/a Ola Brasil, seeks to compel the production of a series of emails that defendant First Data Merchant Services Corporation ("First Data") has withheld on the ground that they are protected from disclosure by the attorney-client privilege. First Data submitted unredacted copies of the emails for in camera review. After reviewing the emails at issue herein, and for the following reasons, plaintiff's motion to compel is granted in part and denied in part.

BACKGROUND

       Familiarity with the underlying facts of the action is presumed. Relevance is not at issue. The key email that gives rise to the instant dispute is from Scott MacNaughton ("MacNaughton"), a First Data executive, on February 8, 2011 to his boss, Mark Jurek ("Jurek"), First Data's Business Director at the time (the "MacNaughton email"). In his email, MacNaughton advises Jurek of an issue whereby certain of First Data's merchants were being

-1-

overcharged for "authorization and capture fees." MacNaughton further advises Jurek of the "current solution" being implemented as well as a "proposed solution" for how to address the issue, stating that "[a] business decision needs to be made . . . ." (Pl. Mot. to Compel, Ex. 1.) No one disputes that the MacNaughton email is not privileged and it has been produced.

A series of emails thereafter followed the MacNaughton email, addressing the issues raised by MacNaughton to Jurek. First Data has withheld these emails on the grounds of privilege because their in-house counsel, Michael N. Cohen ("Cohen"), was either included in the "to" line or was "cc'd" on each of the subsequent emails for which the privilege is invoked. According to Cohen, the usual practice at First Data is for colleagues to address emails to Cohen, or include him as a "cc," "only in situations where they are seeking legal advice." (Cohen Decl. ¶ 6.)

## DISCUSSION

I.   The Attorney-Client Privilege

In diversity actions, such as this one, attorney-client privilege is governed by state law. See Newmarket Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A., 258 F.R.D. 95, 99 n.2 (S.D.N.Y. 2009) (citing Application of Am. Tobacco Co., 880 F.2d 1520, 1527 (2d Cir. 1989)) (additional citation omitted). New York law on attorney-client privilege is "generally similar to accepted federal doctrine." Bowne of New York City v. AmBase Corp., 150 F.R.D. 465, 470 (S.D.N.Y. 1993)).

The attorney-client privilege covers any "communication between client and counsel or his employee, that was intended to be and was in fact kept confidential, and . . . was made in

-2-

order to assist in obtaining or providing legal advice or services to the client." Bowne, 150 F.R.D. at 470-71 (citing People v. Mitchell, 58 N.Y.2d 368, 373 (1983)); see also In re Currency Conversion Antitrust Litig., No. 05 Civ. 7116, 2010 WL 4365548, at *3 (S.D.N.Y. Nov. 3, 2010) ("To be privileged, a communication must be for the purpose of obtaining or providing legal advice and assistance."). "The burden of proving each element of the privilege rests on the party claiming protection." United States Postal Serv. v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 159 (E.D.N.Y. 1994) (citing In re Horowitz, 482 F.2d 72, 82 (2d Cir. 1973)) (additional citation omitted). This First Data has failed to do.

"Where, as here, in-house counsel, who are often business executives, are involved in the communications, 'the question usually is whether the communication was generated for the purpose of obtaining or providing legal advice as opposed to business advice.'" In re Currency Conversion, 2010 WL 4366548, at *3 (quoting In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007)). "Communications that seek or involve principally the performance by the attorney of non-legal functions are not protected." In re Omnicom Group Inc. Secs. Litig., 233 F.R.D. 400, 404 (S.D.N.Y. 2006) (citing In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1037 (2d Cir. 1984)).

While the law is clear that the privilege may attach to communications between a company's employees acting on behalf of the company and in-house counsel, "the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure." Rossi v. Blue Cross & Blue Shield of Greater N.Y., 73 N.Y.2d 588, 594 (1989) (citations omitted). Accordingly, in order to qualify as privileged, the communication must be "primarily or predominantly of a legal character." Id.

Here, none of the documents discussed at Part II involve communications from in-house counsel. Rather, the issue here is whether the "cc" or "to" communication, along with other business executives, is sufficient basis to invoke the attorney-client privilege. Under the circumstances presented here, it does not.

II.  The Emails Contained in Plaintiff's Exhibits 2 and 15 Through 19

After reviewing the emails contained in plaintiff's Exhibits 2 and 15 through 19, the Court finds no basis for First Data's having withheld them from disclosure. All of the emails flow from the original MacNaughton email and all address the issues raised by MacNaughton in his email, wherein the issue is one that requires a "business decision." (Pl. Mot. to Compel, Ex. 1.) While Cohen is an intended recipient or is included as a "cc", among others, on all of these emails, "the mere fact that a communication is made directly to an attorney, or an attorney is copied on a memorandum, does not mean that the communication is necessarily privileged." Phelps Dodge, 852 F. Supp. at 160 (citing Simon v. G.D. Searle & Co., 816 F.2d 397, 403-04 (8th Cir. 1987)); see also JSMS Rural LP v. GMG Capital Partners III, LP, No. 04 Civ. 8591, 2006 U.S. Dist. LEXIS 35613, at *16 (S.D.N.Y. May 30, 2006) ("At base, defendants appear to contend that if a document was addressed to, sent by or copied to a lawyer, it is privileged. That is plainly not the case."). As set forth above, the communication must be "primarily or predominantly of a legal character." Rossi, 73 N.Y.2d at 594. There is nothing contained in the emails included in Plaintiff's Exhibits 2 and 15 through 19 that qualifies as a request for legal advice addressed to Cohen.

Nor is there any response from Cohen at issue that could be construed as providing legal

advice. In fact, Cohen's only response throughout the entire series of emails came almost one month after MacNaughton sent his original email and merely suggests that the parties involved "recap the initial issue" and where First Data was in its response to it. (Pl. Ex. 2.) Again, however, nothing about this email appears to be of a legal nature. MacNaughton's original email clearly stated that a "business decision" needed to be made about the issues facing First Data with respect to the possible overcharging of their merchants. Cohen's response is simply a reminder that such a business decision has yet to be reached.

As stated supra, "the attorney-client privilege only attaches to legal, as opposed to business, services." Phelps Dodge, 852 F. Supp. at 160. "The communication must be made to the attorney acting in [his] capacity as counsel . . . If the communication is made to the attorney in [his] capacity as business advisor . . . it ought not be privileged." Id. (citation omitted).

As support for First Data's claim that Cohen was acting in a legal capacity at all times during the time period that the emails at issue were exchanged, Cohen asserts in his declaration that he was "acting in his capacity as an attorney in the virtual discussion, as well as any other discussions (whether virtual, by telephone or in person) in which [he] participated" with respect to the MacNaughton email. (Cohen Decl. ¶ 12.) Cohen further asserts that during a conference call that took place on March 29, 2011, he and others, including Jurek, Rick Learch - the Senior Vice President of Sales at First Data - and MacNaughton, "discussed the legal implications of the proposals outlined" in the MacNaughton email. (Cohen Decl. ¶ 16.) However, these conversations are not at issue on this motion. Moreover, "[c]onclusory assertions will not suffice" to demonstrate a claim of privilege. Aiossa v. Bank of America, No. CV 10-1275, 2011 U.S. Dist. LEXIS 102207, at *27 (E.D.N.Y. Sept. 12, 2011) (citing Von Bulow v. Von Bulow,

811 F.2d 136, 146 (2d Cir. 1987)). "The party invoking the privilege has the burden of proving the facts on which the privilege claim is based, and must do so by competent and specific evidence, rather than by conclusory or ipse dixit assertions." In re Omnicom, 233 F.R.D. at 404 (citing cases). First Data has failed to meet that burden with respect to the emails contained in Plaintiff's Exhibits 2 and 15 through 19.

Accordingly, plaintiff's motion to compel the production of the emails contained in Exhibits 2 and 15 through 19 is granted. First Data shall produce unredacted copies to plaintiff within ten (10) days of the date of this Order.

III.     The Emails Contained in Plaintiff's Exhibits 3 and 4

A different result is reached with respect to the emails contained in Plaintiff's Exhibits 3 and 4. These emails involve a different issue. The emails contained in Plaintiff's Exhibits 3 and 4 involve ongoing discussions between Cohen and several other individuals within First Data about a settlement with the plaintiff herein prior to the commencement of this action. Also unlike the emails contained in plaintiff's Exhibits 2 and 15 through 19, Cohen is highly involved in this chain of emails and it is clear from the emails themselves that his participation is predominantly of a legal character.

It is well-settled that "[c]ommunications from an attorney to a client dealing with the substance of imminent litigation generally will fall into the area of legal rather than business or personal matters." Rossi, 73 N.Y.2d at 594 (citing cases). That is precisely what the emails contained in plaintiff's Exhibits 3 and 4 pertain to and, as a result, they are privileged.

Accordingly, plaintiff's motion to compel with respect to the emails contained in

plaintiff's Exhibits 3 and 4 is denied. Such emails have been properly withheld on the basis of attorney-client privilege.

CONCLUSION

For the foregoing reasons, plaintiff's motion to compel is granted in part and denied in part. Specifically, plaintiff's motion is granted with respect to the emails contained in plaintiff's Exhibits 2 and 15 through 19 and First Data is directed to produce unredacted copies of those emails to plaintiff within ten (10) days of the date of this Order. In all other respects, plaintiff's motion is denied.

**SO ORDERED:**

Dated: Central Islip, New York
       February 19, 2013

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge
